UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JAVIER CABRAL, § | |
|    Plaintiff, § | |
| § | |
| vs. § | Civil Action No. SA-14-CV-1037-DAE |
| § | |
| MEGAN J. BRENNAN, § | |
| POSTMASTER GENERAL, § | |
| U.S. POSTAL SERVICE, § | |
|    Defendant. § | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE DAVID EZRA, SENIOR U. S. DISTRICT JUDGE:

Defendant Megan J. Brennan, in her official capacity as Postmaster General, "Defendant," or "the Postal Service," moves for summary judgment under Fed. R. Civ. P. 56(c). In support of this Motion for Summary Judgment, and pursuant to Local Court Rule CV-7(d)(1), Defendant has also separately submitted her Statement of Facts and Appendix of Exhibits in support of this Motion.[1]

**PRELIMINARY STATEMENT**

Plaintiff's 71-paragraph multi-allegation Complaint obscures what is a straight-forward two claim employment discrimination case: 1) that the Postal Service allegedly discriminated against Cabral because of his race/national origin (Mexican-American) and his age (44 when the alleged discrimination occurred), and retaliated against him because of his prior EEO activity when he was given a Notice of Proposed Removal on May 1, 2013, which was upheld via Letter of Decision dated June 6, 2013; and, 2) that on the same legal bases, "[o]n September 9, 2013,

---

[1] References to the Statement of Facts are abbreviated as "SOF," followed by a paragraph number(s). References to the Appendix of Evidence are abbreviated as "APPX," followed by a four digit page number(s). The Appendix of Evidence is indexed and consecutively numbered.

-1-

[Plaintiff] was placed in an off duty non-pay status [for two days]"[2] Plaintiff also attempts to raise myriad claims of hostile work environment in his federal court Complaint, but these claims were not administratively exhausted and are untimely. Moreover, Plaintiff's general claims of harassment – since they apply to virtually all of the carriers at the Laurel Heights Station – actually undermine any claim that he was subjected to disparate treatment discrimination or retaliation.

Summary judgment should be granted on Plaintiff's claim in connection with his proposed removal for four separate reasons: A) Plaintiff's *prima facie* case of disparate treatment discrimination fails because he cannot show any similarly-situated employees received preferential treatment; B) Plaintiff otherwise has no probative evidence of disparate treatment; C) Plaintiff's retaliation claim fails because of the time gap between his prior protected EEO activity and the May 1, 2013 Notice of Removal; and, D) the Postal Service had multiple legitimate, non-discriminatory reasons for the proposed removal.

Summary judgment should be granted on Plaintiff's claim regarding being sent home from work in September, 2013 because: A) he received full pay and therefore did not sustain a materially adverse employment action; B) he cannot show any similarly-situated employees who received preferential treatment, or otherwise establish disparate treatment; C) Plaintiff was sent home for work for legitimate non-discriminatory reasons: he did not have a valid driver's license.

Summary judgment should be granted on Plaintiff's hostile work environment claim because: A) he failed to exhaust administrative remedies; B) none of the alleged harassment was based on Plaintiff's protected characteristics; C) the alleged harassment was not severe or pervasive as a matter of law.

---

[2] APPX at 0188 (Final Agency Decision Statement of Claim).

## **LEGAL STANDARDS**

**Summary Judgment**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  Where, as here, the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case."[3]  With specific regard to employment discrimination cases, the focus is on whether the defendant intentionally discriminated against the plaintiff.[4]  "Whether the employer's decision was the correct one, or the fair one, or the best one is not a question within the jury's province to decide."[5]

**Disparate Treatment Discrimination**

Normally, to establish a *prima facie* case of disparate treatment discrimination, the plaintiff must demonstrate that he was treated less favorably than similarly-situated employees outside his protected group.[6]  In evaluating whether the plaintiff can meet the high burden of establishing "nearly identical circumstances," the Court should consider whether the employees being compared fulfilled the same job responsibilities, shared the same supervisor, and had essentially comparable violation histories.[7]

---

[3] *See* ***Celotex Corp. v. Catrett***, 477 U.S. 317, 325 (1986).
[4] ***Grimes v. Tex. Dep't of Mental Health & Retardation***, 102 F.3d 137, 139 (5th Cir. 1996).
[5] ***Deines v. Tex. Dep't of Protective & Regulatory Servs.***, 164 F.3d 277, 281 (5th Cir. 1999).
[6] *E.g.*, ***McCoy v. City of Shreveport***, 492 F.3d 551, 556 (5th Cir. 2007) (Title VII discrimination claim); ***Fields v. J.C. Penney Co.***, 968 F.2d 533, 536 n.2 (5th Cir. 1992) (same standard for age discrimination case, except plaintiff may compare herself to someone substantially younger, but not necessarily someone under age 40).
[7] ***Lee v. Kansas City Southern Ry. Co.***, 574 F.3d 253, 260 (5th Cir. 2009) (Title VII race discrimination case). *See also* ***Hoffman v. Baylor Health Care Sys.***, 597 F. App'x 231, 235-36 (5th Cir. 2015) (age discrimination case, citing ***Lee***).

**Retaliation**

Where the plaintiff can only produce circumstantial evidence of retaliation, the well-known *McDonnell Douglas* burden shifting framework applies. Under this framework, "the initial burden rests on plaintiff to establish a prima facie case of retaliation. … He must show: (1) his conduct constituted protected activity; (2) an adverse employment action against him following that conduct; and (3) a causal link between that conduct and that adverse action. … If plaintiff establishes a prima facie case …, the burden shifts to defendant to produce a legitimate, non-retaliatory reason for its adverse employment action. … If defendant satisfies its burden, [the burden] shifts back to plaintiff to show defendant's reasons were pretext for unlawful retaliation; that is, but for the protected activity, the adverse employment action would not have occurred."[8] In order to establish pretext "[a]t the third step of the analysis, … [Plaintiff] must be able to rebut **each** legitimate reason articulated by [the employer]."[9]

**Hostile Work Environment**

Title VII is violated, on a "hostile work environment" theory, when the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of victim's employment and create an abusive working environment.[10] To establish a hostile work environment claim, Plaintiff must show that: 1) he belongs to a protected group; 2) he was subjected to unwelcome harassment; 3) the harassment

---

[8] *Gollas v. Univ. of Texas Health Science Ctr. at Houston*, 425 F. App'x 318, 321 (5th Cir. 2011) (citations omitted).
[9] *Preston v. Texas Dept. of Family and Protective Services*, 222 F. App'x 353, 359-60 (5th Cir. 2007) (original emphasis) (citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). *See also Harris v. Miss. Transp. Comm'n*, 329 F. App'x 550, 556 (5th Cir. 2009) (following *Laxton* and quoting *Wallace v. Methodist Hosp. Sys.*, 271 F. 3d 212, 220 (5th Cir. 2001).
[10] *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 399 (5th Cir. 2007) (citation omitted).

was based on his protected classification; and 4) the harassment affected a term, condition, or privilege of his employment,[11] i.e. that the harassment was "severe or pervasive."[12]

## ARGUMENT

### I. SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S PROPOSED REMOVAL CLAIM.

#### A. Plaintiff Cannot Show Any Similarly-Situated Employees Who Received Preferential Treatment Under Nearly Identical Circumstances.

Plaintiff is required to make this showing to establish a *prima facie* of age or race/national origin discrimination. He has failed to do so. During administrative proceedings, Plaintiff declined to identify any allegedly similarly-situated employees. In answers to interrogatories during District Court proceedings, rather than identify any specific individuals, Plaintiff referenced over 400 pages of documents produced in response to Requests for Production.[13] The lack of proof on this essential element was further tested at Plaintiff's federal court deposition. There, he conceded that he had no evidence that management had observed other letter carriers driving with their vehicle doors open who had not been disciplined.[14]

After reviewing a discipline file provided by a union representative regarding other letter carriers who were allegedly treated differently from Plaintiff, Mr. Cabral could only identify two allegedly similar individuals – one who was involved in a vehicle accident (Mr. Mendez), and one who allegedly was not disciplined for talking on a cell phone while driving (Mr. Hughes). Even assuming that these unauthenticated hearsay statements are admissible, they fall far short

---

[11] *See* **Williams-Boldware v. Denton County**, 741 F.3d 635, 640 (5th Cir. 2014) (citation omitted); **Ramsey v. Henderson**, 286 F.3d 264, 268 (5th Cir. 2002). A fifth element – whether the employer knew of should have known of the harassment but failed to take prompt remedial action is not necessary when a supervisor, rather than a co-worker, is accused of the harassing conduct. ***Watts. v. The Kroger Co.***, 170 F.3d 505, 509 (5th Cir. 1999).
[12] ***Ramsey***, *supra*.
[13] *See* APPX at 0256 (response to Interrogatory No. 9).
[14] APPX at 0087-88. (Cabral Fed. Dep. at 161:25 – 162:11).

of meeting the high threshold needed to establish disparate treatment. Although Mendez was allegedly much younger than Plaintiff, Plaintiff had no other information regarding his accident, and could not say the accident involved failure to follow instructions, or that Mendez had any prior disciplinary record.[15] Likewise, with respect to Mr. Hughes, Plaintiff also cannot identify this alleged comparator's race or national origin, or his prior disciplinary record.[16] There is also no information provided regarding whether these two individuals had the same chain-of-command as Plaintiff. Under controlling Fifth Circuit law, for comparisons of disciplinary action to be probative of disparate treatment, the individuals being compared must have fulfilled the same job responsibilities, shared the same supervisor, and had essentially comparable violation histories.[17]

### B. Plaintiff Otherwise Has No Probative Evidence of Age, Race, or National Origin Discrimination.

Plaintiff's alleged evidence of age discrimination boils down to the claim that his first line supervisor, Mr. Harpel, was comparing him to younger employees, and criticizing him for not delivering the same routes as quickly.[18] Plaintiff acknowledged at his deposition, however, that Harpel was comparing him to both younger and older carriers. Yet he still believes, illogically, that this is somehow evidence of age discrimination:

> Q: During 2013, you were a T6 [substitute who covered five different routes on other carriers off days] and were not assigned to one particular route, correct?
>
> A: Yes, sir. …
>
> Q: So [Mr. Harpel] was comparing you to those five [regular] carriers?

---

[15] APPX at 0060-62. (Cabral Fed. Dep. at 124:16 – 126:22).
[16] APPX at 0063-66. (Cabral Fed. Dep. at 127:1 – 130:8).
[17] *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).
[18] *See generally* Plaintiff's Original Complaint ¶ 21.

> A: Yes.
>
> Q: And I think you said one of the guys that you covered for on the T6 string is now retired, right?
>
> A: Yes, sir.
>
> Q: So I assume he must be someone who was considerably older than you if he was retiring, correct?
>
> A: Yes, sir. He was retirement age. …
>
> Q: Arturo Gomez [another one of the regular carriers for whom Plaintiff covered], do you know how old he is?
>
> A: He's been with the postal service since 1972, I believe.
>
> Q: That means he's definitely older than you, right?
>
> A: Yes, sir. …
>
> Q: Now, are you telling us that you think [Mr. Harpel] was doing this as a result of age discrimination?
>
> A: I don't know if – Well, when he compares me to a younger carrier, yes, that could possibly be age discrimination. When he compares me to the letter carriers who've been doing that route for years, it's just harassment.
>
> Q: Well, he was comparing you to both younger and older carriers, right?
>
> A: Yes, sir.[19]

The two managers who interacted with Plaintiff most frequently were his first-line supervisor Mark Harpel, and his Station Manager Arnold Pena. Plaintiff acknowledged at his deposition that he had no other evidence of age discrimination against either Mr. Harpel or Mr. Pena, and that "you would have to ask Mr. Harpel or Mr. Pena" whether their alleged harassment was based upon Plaintiff's age.[20]

---

[19] APPX at 0046-53. (Cabral Fed. Dep. at 100:7 – 108:17).
[20] *See* APPX at 0054-55. (Cabral Fed. Dep. at 109:9-14; 114:1-21).

Plaintiff's alleged proof of race/national origin discrimination is similarly weak. Plaintiff attempts to make much ado about an alleged comment made by Postmaster Carr at the Laurel Heights Station. Plaintiff claims that on one occasion Mr. Carr allegedly stated that the employees at Laurel Heights needed to bathe or take showers more often "because a lot of us stink." Although Plaintiff acknowledged that there were also White and Black employees at Laurel Heights, he believes this alleged statement is indicative of racial animus because "the majority of us there were not Anglo … [T]here were a lot of Hispanics there."[21]

Plaintiff further admitted at his deposition that he had no evidence that Pena, Harpel or any other supervisor discriminated against him on the basis of his race, national origin, or age.[22]

### C. **The Time Gap Between Plaintiff's Prior EEO Activity and His Proposed Removal Negates Any Inference of Retaliation.**

It is well-settled in the Fifth Circuit that a time gap of even 4-5 months between the plaintiff's prior protected EEO activity and the challenged employment action is insufficient to establish causation on the basis of temporal proximity.[23] In this case there is no other suggested evidence of retaliation other than Plaintiff's belief and speculation. It is also settled Fifth Circuit law that "temporal proximity standing alone can[not] be sufficient proof of but for causation."[24] The Postal Service's Final Agency Decision correctly concluded that Plaintiff could not establish

---

[21] APPX at 0057-59. (Cabral Fed. Dep. at 116:23 – 118:16).

[22] APPX at 0056-57. (Cabral Fed. Dep. at 115:11 – 116:22). Plaintiff's claim regarding his former supervisor Mike Stewart yelling at him is beyond the parameters of this complaint, and is not evidence of race discrimination in any event.

[23] *See, e.g.,* **Everett v. Cent. Miss., Inc. Headstart Program**, 444 F. App'x 38, 47 (5th Cir. 2011) (finding that 5 month temporal proximity was insufficient to establish causal link); **Barkley v. Singing River Elec. Power Ass'n**, 433 F. App'x 254, 260 (5th Cir. 2011) (holding that temporal proximity must be "very close" to establish causation, and that four months was insufficient). *See also* **Clark County Sch. Dist. v. Breeden**, 532 U.S. 268, 273-74 (2001) (citing with approval other federal circuit court cases that found three and four month periods too long to allow an inference of causation).

[24] **Strong v. University Health System, L.L.C.**, 482 F.3d 802, 808 (5th Cir. 2007); *see also* **Roberson v. Altel Information Services**, 373 F.3d 647, 656 (5th Cir. 2004) ("Without more than timing allegations ... summary judgment in favor of [the defendant] was proper.").

the necessary causal link to support his retaliation claim because: "complainant's last prior EEO complaint was closed on July 11, 2012,[25] or approximately 9 ½ months prior to the issuance of the Notice of Proposed Removal dated May 1, 2013."[26]

The Postal Service submits that there is not nearly enough evidence to require it to come forward with the legitimate business reasons for its removal proposal.  If deemed necessary by the Court, however, these reasons provide an independent basis to grant summary judgment in favor of Defendant on this claim.

### D.  The Postal Service Acted for Legitimate Non-Discriminatory Reasons.

These reasons have been set forth in Defendant's Statement of Facts and will not be fully reiterated here.  In short, the Postal Service proposed Plaintiff's removal from employment for three major charges arising out of the incidents of February 26, 2013.[27]  Given Plaintiff's extensive disciplinary history of similar incidents of failing to follow supervisory instructions and insubordination,[28] the proposal for removal was fully warranted.  Plaintiff cannot establish that each of these reasons was a pretext for discrimination or retaliation.

Plaintiff's claim regarding his proposed removal from employment should therefore be dismissed.

---

[25] In Plaintiff's signed June 4, 2013 Information for Pre-Complaint Counseling, he stated that his prior EEO activity of March 17, 2012, Case No. 4G-780-0127-12 was the EEO activity that he felt caused him to be retaliated against.  APPX at 0121-23.
[26] APPX at 0200.  *See also* APPX at 141-43 (detailing the activity regarding Plaintiff's 2012 EEO complaint).
[27] *See* SOF ¶¶ 5-8, 11-12.
[28] *See* SOF ¶¶ 2-3.

## II. SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S CLAIM THAT HE WAS WRONGFULLY PLACED IN AN OFF-DUTY STATUS FOR TWO DAYS.

### A. Plaintiff's Two-Day Paid Suspension Was Not a Materially Adverse Action.

When Plaintiff's supervisor discovered that Mr. Cabral did not have a valid driver's license, he invoked Emergency Procedures, and sent Plaintiff home on September 9, 2013. Plaintiff failed to notify his supervisors of his license suspension, as required by Postal Service rules. He grieved this event, and as a result of the grievance, he was reimbursed two days of back pay.[29]

Plaintiff further acknowledged at his deposition that other than a speculative claim for lost overtime, he otherwise was not harmed: his schedule was not changed, and he did not lose any employee benefits.[30] He repeats that he felt like "[i]t was a hostile work environment. It was a lot of harassment, and I felt retaliated [against] from the get-go for the picket that we held."[31] Plaintiff's subjective, emotional reaction to his alleged mistreatment does not make a challenged employment action materially adverse, however.[32]

Again the analysis of the Final Agency Decision is on the mark:

> EEOC Regulations found at 29 C.F.R. 1614.107(a), state that prior to a request for a hearing in a case; the agency shall dismiss an entire complaint that fails to state a claim … [A]n agency may not accept a complaint from a complainant that is not aggrieved. The term 'aggrieved' has been interpreted by the courts and the Office of Federal Operations to mean an employee who has suffered a personal loss or harm with respect to a term, condition, or privilege of employment. … As the complainant

---

[29] *See* SOF ¶¶ 15, 18, 19.
[30] APPX at 0034. (Cabral Fed. Dep. at 84:2-25).
[31] APPX at 0035. (Cabral Fed. Dep. at 85:3-6).
[32] *See* **E.E.O.C. v. Fox News Network, LLC**, 806 F. Supp. 2d 128, 137 (D.D.C. 2011) ("Plaintiff also argues that [she] suffered emotional distress during contract negotiations because of the 'constant fear of being discharged, losing her livelihood and losing her medical insurance benefits.' … Emotional distress and other purely speculative injuries … have been consistently rejected in our Circuit as legally sufficient to constitute a materially adverse action, and thus [the] alleged injuries are no different here.") (citations omitted).

> was paid leave for the two dates in question, there is no evidence that complainant is currently denied any entitlement in relation to a term, condition or privilege of employment as a result of the incident he alleges. *See **Harris v. Forklift Syst.**, **Inc.***, 510 U.S. 17, 21 (1993) …[33]

Assuming arguendo that Plaintiff can cross the adverse action threshold, this claim is still subject to dismissal.

### B. Plaintiff Cannot Show Any Similarly-Situated Employees or Otherwise Establish Disparate Treatment.

Plaintiff testified at his deposition that he did not know of anyone else driving without proof of a valid driver's license that was treated preferentially.[34] Indeed, Plaintiff does identify one other letter carrier who was **required to enter a different career field** because of several DWI's.[35]

Plaintiff also acknowledged that he did not have further evidence to establish age, race, or national origin discrimination.[36]

### C. Plaintiff Was Sent Home for Legitimate Business Reasons.

It is not difficult to imagine the possible tort consequences which might follow if the Postal Service were to allow a letter carrier like Mr. Cabral to drive a government vehicle after his State driver's license had been suspended in connection with a DWI conviction. For these obvious reasons, Article 29 of the Collective Bargaining Agreement requires letter carriers to "inform [their] supervisor immediately of the revocation or suspension of such employee's State driver's license."[37] Plaintiff does not dispute that he failed to make such notification.[38] It also cannot be disputed that Plaintiff did not present written proof to Mr. Harpel that he was

---

[33] APPX at 0188-89 (other citations omitted).
[34] APPX at 0077-78. (Cabral Fed. Dep. at 146:23 – 147:3).
[35] APPX at 0078-79. (Cabral Fed. Dep. at 147:7 – 148:4).
[36] APPX at 0055-57. (Cabral Fed. Dep. at 114:22 – 116:4).
[37] SOF ¶ 19.
[38] SOF ¶ 19.

legally authorized to drive as of September 9, 2013[39] (even if he thought in his own mind that he could legally drive). Under these circumstances, the Postal Service's decision to prevent Plaintiff from driving his Postal route on September 9 and September 10 was not only non-discriminatory, it was also prudent management practice.

### III. SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM.

#### A. Plaintiff Failed to Exhaust Administrative Remedies Regarding Any Hostile Work Environment Claim.

During administrative proceedings, Plaintiff attempted to allege a hostile work environment claim, but the agency did not accept the claim for investigation. By letter dated October 4, 2013, Plaintiff was advised that his hostile work environment claim was not accepted for investigation, and that if he wished to object to the Agency's definition of the issues, he was required to "provide a written response specifying the nature of your disagreement within seven (7) calendar days of the date of your receipt of this letter."[40] Although Plaintiff's representative submitted an earlier response to the Agency's framing of the issues, he did not respond to this letter. Under these circumstances, the Court should conclude that the issue has been abandoned.[41]

---

[39] SOF ¶ 18.
[40] APPX at 0124-127.
[41] *See, e.g.,* **Clayton v. Rumsfeld**, 106 F. App'x 268, 271 (5th Cir. 2004) (affirming dismissal of claims against the Army/Air Force Exchange Service because plaintiff failed to object to the framing of the issues by the EEOC and the Administrative Law Judge, finding that "Clayton's demotion claim was abandoned..."); **Dollis v. Rubin**, 77 F.3d 777, 781 (5th Cir. 1995) (plaintiff's failure to object to framing of issues accepted for investigation by Treasury Department's Resolution Complaint Center during administrative process, which did not include claim brought in federal court, supported dismissal of claim for failure to exhaust administrative remedies), *abrogated on other grounds by* **Burlington N. and Santa Fe Ry. Co. v. White**, 548 U.S. 53 (2006); **Barrera v. Ridge**, No. SA-03-CA-299-X, 2004 WL 2810101, at *6 (W.D. Tex. Dec. 8, 2004) (granting summary judgment in favor of the Department of Homeland Security on the basis that plaintiff had failed to exhaust administrative remedies, or had abandoned claim by failing to object to MSPB's statement of claims).

Even assuming that Plaintiff's hostile work environment claim has not been abandoned by operation of law, he still has no timely harassment claim to pursue. Plaintiff did not contact an EEO Counselor until May 24, 2013.[42] For a claim to be timely under 29 C.F.R. § 1614.105(a), the aggrieved federal employee must contact an EEO Counselor within 45 days of the discriminatory event, and any claims which arise prior to this 45-day period are barred.[43]

In this case, the 45-day period extends back only until April 9, 2013. As Plaintiff was not even at work between February 27, 2013, and May 24, 2013,[44] he cannot pursue any other claims. Nor can any hostile work environment claims be rescued by the "continuing violation" doctrine because an action such as a proposed removal is a discrete act to which the continuing violation doctrine does not apply.[45]

### B. Plaintiff's Alleged Evidence of Hostile Work Environment Actually Negates Any Inference That He Was Singled Out for Harassment Because of His Protected Characteristics.

It is an essential element of a hostile work environment claim that the alleged harassment be based upon one of the Plaintiff's protected characteristics. Quite obviously, if numerous other employees in the workplace, outside of Plaintiff's protected class(es), are subject to the same allegedly harassing treatment, the harassment could not have been based upon Plaintiff's protected class, and his hostile work environment claim must fail. On numerous occasions in his deposition, Plaintiff testified that many of the letter carriers at the Laurel Heights station were also subject to the same alleged harassment.[46] Additionally, other than the vague alleged

---

[42] SOF ¶ 20.
[43] *E.g.,* **Teemac v. Henderson**, 298 F.3d 452, 454 (5th Cir. 2002).
[44] *See* SOF ¶ 9.
[45] *See generally* **National R.R. Passenger Corp. v. Morgan**, 536 U.S. 101 (2002).
[46] *See, e.g.,* APPX at 0027 (Cabral Fed. Dep. at 73:17-22) ("[Mr. Harpel] would go up **to everyone** and show them … the time [standards and] he would say, you went 30 minutes over."); APPX 0038-40 (Cabral Fed. Dep. at 91:9 – 93:22) (many carriers at Laurel Heights picketed against Station Manager Pena and were complaining about frivolous discipline and questioning

comment about the letter carriers needing to bathe more often, Plaintiff has yet to identify allegedly harassing conduct which was explicitly based upon any protected characteristic.[47]

### C. The Alleged Harassment Was Not Severe or Pervasive.

Notwithstanding Plaintiff's subjective belief that he was constantly harassed, the type of conduct he complains of is insufficient as a matter of law to establish a hostile work environment. Criticism of an employee's job performance is not sufficient.[48] Likewise, being subject to a rude or demanding boss is insufficient.[49]

For all the foregoing reasons, summary judgment should be GRANTED in favor of the Postal Service, all of Plaintiff's claims should be DISMISSED WITH PREJUDICE, Defendant should recover its Rule 54 costs against Plaintiff, and for such other relief to which Defendant may be justly entitled.

---

of "**the majority** of carriers" about overtime – Cabral did not know of any carriers who were not questioned about the time standards) (emphasis added).

[47] *See, e.g.*, ***Farpella-Crosby v. Horizon Health Care***, 97 F.3d 803, 806 n.2 (5th Cir. 1986) ("Sex-neutral hostile conduct cannot be used to support a hostile environment claim. Title VII does not protect employees from hostile conduct that is not based on their protected status."); ***McCray v. DPC Industries, Inc.***, 942 F. Supp. 288, 292-93 (E.D. Tex. 1996) ("To establish a prima facie case of 'hostile work environment' based on race, a plaintiff must show more than that he was treated badly and that he was black. ... [A]n abusive working environment [under ***Meritor***] requires a plaintiff to 'prove more than a few isolated incidents of racial enmity.' ... Instead, 'there must be a steady barrage of opprobrious racial comments.'") (citations omitted)).

[48] ***Kang v. Board of Supervisors of Louisiana State University***, 2003 WL 22272920 (5th Cir. 2003) (unpublished) (rejecting hostile work environment claim even though plaintiff received a poor performance evaluation, was "written up" for work performance, received a less-than-average pay raise, was not nominated for a teaching award, and was "unfairly and unjustly" criticized by his supervisor in an office meeting), cert. denied, 124 S. Ct. 1603 (2004)

[49] *See, e.g.*, ***Webb v. Cardiothoracic Surgery Associates of North Texas, P.A.***, 139 F.3d 532, 539-540 (5th Cir. 1998) ("Webb's exposure to a rude, demanding boss ... who [inter alia] treated her rudely by shouting at her and throwing a magazine at her feet ... did not render her employment intolerable so as to support a claim of constructive discharge.") (quid pro quo sexual harassment claim).

DATED: October 13, 2015                              Respectfully submitted,

**RICHARD L. DURBIN, JR.**
United States Attorney

By:     /s/ *Robert Shaw-Meadow*

AGENCY COUNSEL:                                      **ROBERT SHAW-MEADOW**
Paul C. Wolf                                          Assistant United States Attorney
U.S. Postal Service                                   Texas Bar No. 18162475
Law Dept. Southwest Office                            601 N.W. Loop 410, Suite 600
P.O. Box 227078                                       San Antonio, Texas 78216
Dallas, Texas 75222-7078                              Telephone: (210) 384-7355
                                                      Facsimile:  (210) 384-7312
                                                      E-mail: Rob.Shaw-Meadow@usdoj.gov

**ATTORNEYS FOR DEFEENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF system on this 13th day of October, 2015, and was served via ECF as follows:

Arthur G. Vega
Law Offices of Arthur G. Vega
419 S. Main Street
Suite 301
San Antonio, TX 78204

/s/ *Robert Shaw-Meadow*
**ROBERT SHAW-MEADOW**
Assistant United States Attorney

-15-