IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JAVIER CABRAL, | § | NO. 5:14-CV-1037-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| MEGAN J. BRENNAN, | § | |
| United States Postmaster General, | § | |
| | § | |
| Defendant. | § | |

_____

ORDER GRANTING MOTION TO RECONSIDER

The matter before the Court is Defendant Megan J. Brennan, United States Postmaster General's Motion for Reconsideration of Order Denying Summary Judgment. (Dkt. # 46.) Pursuant to Local Rule 7(h), the Court finds this matter suitable for disposition without a hearing. After careful consideration of the memoranda in support of and in opposition to the motion, the Court, for the reasons that follow, **GRANTS** Defendant's motion, and **DISMISSES WITH PREJUDICE** Plaintiff's remaining claim for retaliation based on his placement in off-duty status without pay on September 9, 2013.

BACKGROUND

In May 2004, Plaintiff became a letter carrier with the United States Postal Service in San Antonio, Texas. (Dkt. # 1 at 2.) In June 2005, Plaintiff was

assigned to the Laurel Heights Postal Service Station.  (Id.)  Plaintiff contends that his duties as a letter carrier were to deliver mail in an efficient manner.  (Id.)  During his employment with Defendant, Plaintiff asserts that he experienced discrimination, harassment, and retaliation.

First, on March 17, 2012, Plaintiff alleges that he filed an internal Equal Employment Opportunity ("EEO") complaint against his supervisors, Arnold Pena and Mike Stewart, complaining that he was discriminated against based on his age and that he suffered retaliation.  (Id.)  Specifically, Plaintiff asserts that Stewart threatened him with discipline if he failed to make the time standards set by Defendant and that Stewart yelled at Plaintiff in an attempt to intimidate and harass him.  (Id. at 3.)  Plaintiff contends that based on this conduct, he filed a postal union grievance complaining of discrimination based on his race and ethnic background.  (Id.)

On April 24, 2012, Plaintiff alleges that he was issued a fourteen day suspension, but that the suspension was reduced to a letter of warning—a lesser punishment—after he filed his union grievance.  (Id.)  Thereafter, on June 29, 2012, Plaintiff contends that he and Defendant engaged in mediation for his EEO complaint, but that no resolution was reached.  (Id.)

Plaintiff further asserts that on July 19, 2012, Stewart used abusive language towards him in the presence of a customer, resulting in Plaintiff's filing another internal grievance. (Id. at 4.) In response to this grievance, Plaintiff states that the Defendant's internal resolution team found that Stewart violated provisions of the employee manual. (Id.) According to Plaintiff, the resolution team responded by reminding "employees to maintain a harmonious working relationship and not do anything that would contribute to an unpleasant working environment." (Id.)

In September 2012, Plaintiff contends that he filed a second EEO claim against Stewart and Pena alleging age and retaliatory discrimination. (Id. at 5.) Subsequently, Plaintiff alleges that Pena instructed him not to wear a hat because it was an unauthorized apparel item. (Id.) Plaintiff asserts, however, that other employees wore unauthorized items and that he was specifically targeted for discipline. (Id.) He contends that Pena publicly announced to Plaintiff's coworkers that if Pena "wrote them up" for not wearing authorized apparel then they would have to blame Plaintiff. (Id.) Plaintiff states that as a result of this, he filed another internal grievance, which was settled in his favor on October 4, 2012. (Id.)

Subsequently, on October 30, 2012, Plaintiff contends that Pena called him into his office and threatened to have Plaintiff terminated unless Plaintiff abided by the time standards for work required by Defendant. (Id. at 5–6.) According to Plaintiff, he filed another internal grievance based on this incident, but that the resolution was that Plaintiff did not submit sufficient evidence. (Id. at 6.) Thereafter, on October 31, 2012, Plaintiff contends that mediation for his second EEO claim occurred, but that no resolution was reached. (Id.) Plaintiff alleges that he was harassed while on vacation, on November 26, 2012, when he received a Letter of Warning, a disciplinary action, from Mark Harpel and Pena. (Id.) Plaintiff filed another internal grievance as a result of the Letter of Warning. (Id.) He contends that this grievance resulted in the removal and expungement of the Letter of Warning from his personnel file on January 9, 2013. (Id.) Plaintiff asserts, however, that he filed two additional grievances a month apart based on Defendant's continued harassment of him. (Id.)

On February 21, 2013, Plaintiff alleges that he was requested by a supervisor, Arturo Sanchez, to come to the postal station for a pre-disciplinary meeting, but that he was not told what the meeting was about. (Id.) Plaintiff believes that his rights were violated when he was told to answer questions without being informed what the meeting was about. (Id.)

4

Plaintiff contends that on February 26, 2013, he was falsely accused by Pena, Harpel, and Sanchez, of striking Pena with the postal vehicle he was driving because Plaintiff had refused to provide him with his notes of the meeting with Sanchez. (Id. at 7.) The next day, February 27, 2013, Plaintiff contends that he was issued a Letter of Warning for driving his postal vehicle with the door open in the post office parking lot. (Id.) Plaintiff contends that it was common practice among mail carriers to drive with the door open and that his discipline was the result of continued harassment by Pena and Harpel. (Id.) Plaintiff again filed a grievance based on the Letter of Warning, resulting in a pre-arbitration settlement agreement which expunged the incident from Plaintiff's personnel office file. (Id.)

Several months later, on May 1, 2013, Plaintiff contends that he was issued a Notice of Proposed Removal ("NOPR") related to the February 26, 2013, incident where Plaintiff was accused of hitting Pena with the postal vehicle. (Id. at 8.) Plaintiff alleges that he filed another internal grievance and that, in June 2013, he wrote a letter to the Office of Inspector General requesting an investigation into this incident. (Id.) Plaintiff also contends that he wrote a letter to his Congressman, Joaquin Castro, asking his office to intervene in the matter. (Id.) On June 6, 2013, Plaintiff states that Larry Huron, the supervisor in charge of the NOPR, issued a decision which upheld the notice in regard to the February 26, 2013 incident. (Id.)

On July 9, 2013, Plaintiff filed a third EEO claim, alleging age discrimination, retaliation, harassment, hostile work environment, and wrongful termination.  (Id.)  He contends that he filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC") on July 31, 2013.  (Id.)

On August 12, 2013, Plaintiff asserts that a union shop steward, Joseph Blancarte, met with Postmaster Robert Carr, and was informed by him that Defendant would continue to make Plaintiff's life miserable if Plaintiff "won the grievance" that Plaintiff had filed concerning the February 26, 2013 incident.  (Id.)

On August 29, 2013, Plaintiff contends that the grievance was settled in arbitration and Plaintiff returned to work on September 3, 2013.  (Id. at 8–9.)  Plaintiff contends, however, that when he returned to work, he was called into Harpel's office and was harassed and intimidated.  (Id. at 9.)

Two days later, on September 5, 2013, Plaintiff asserts that he wrote that Harpel was harassing him on a form that the letter carriers use to request overtime.  (Id.)  He contends that Harpel was scrutinizing Plaintiff's work performance and "badgering" him by asking questions about his mail delivery.  (Id.)  He alleges that he was subject to further harassment and "badgering."  (Id.)  On September 9, 2013, Plaintiff contends that he was walked out of the station by Harpel, who took his employee identification badge and told him not to

return to work until he received a call from Defendant.  (Id.)  Plaintiff was issued a letter that day, informing him that he was being placed in an off-duty status without pay for "operating his Postal Vehicle on a suspended driving license."  (Dkt. # 29 at 140.)  On September 10, 2013, Plaintiff states that he amended his prior EEO complaint.  The next day, on September 11, 2013, Plaintiff alleges that he received a call from Defendant informing him to return to work the next day.  (Id.)

On September 12, 2013, Plaintiff states that he returned to work, but was again escorted off the premises by Harpel.  (Id.)  He alleges that he filed two separate grievances, and received two full days' pay for the days he was forced to leave by Harpel.  (Id.)  He states that he returned to work the next day, September 13, 2013.  (Id.)

Subsequently, Plaintiff asserts that he timely requested an EEOC hearing before an Administrative Law Judge ("ALJ"), and that on July 13, 2014, he filed a motion requesting the EEOC dismiss his request for a hearing and issue a Final Agency Decision on his July 31, 2013 EEOC claim.  (Id. at 12.)  The motion was granted and, on August 29, 2014, the Postal Service issued its Final Agency Decision concluding that there was insufficient evidence to support a finding of discrimination or retaliation.  (Id.)  Plaintiff was informed of his rights to appeal the decision in federal court.

On November 24, 2014, Plaintiff filed suit in this Court alleging claims against Defendant under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), for race/national origin and age discrimination, as well as claims for harassment, retaliation, and a hostile work environment. (Dkt. # 1.) On February 23, 2016, the Court granted partial summary judgment in favor of Defendant on Plaintiff's claims of age discrimination, national origin discrimination, and race discrimination claims under Title VII, as well as his claim for hostile work environment. (Dkt. # 41.) The Court denied summary judgment on Plaintiff's retaliation claim regarding his placement in off-duty status without pay on September 9, 2013. (Id.)

On March 22, 2016, twenty-eight days after the Court's summary judgment order, Defendant filed a motion to reconsider the Court's ruling. (Dkt. # 46.) Plaintiff responded in opposition on April 15, 2016 (Dkt. # 49), and Defendant filed a reply in support on April 22, 2016 (Dkt. # 50). The motion is discussed below.

## APPLICABLE LAW

Plaintiffs have moved for reconsideration under Rule 54(b) of the Federal Rules of Civil Procedure. (Dkt. # 46.) However, "[a] motion asking the court to reconsider a prior ruling is evaluated . . . as a motion . . . under Rule 59(e) . . . [when] filed within twenty-eight days after the entry of judgment." Demahy v.

Schwarz Pharma, Inc., 702 F.3d 177, 182 n.2 (5th Cir. 2012).  Plaintiffs' motion for reconsideration was filed twenty-eight days after the Court's order and will therefore be considered under Rule 59.

"A Rule 59(e) motion calls into question the correctness of a judgment."  Templet v. Hydrochem, Inc., 367 F.3d 473, 478 (5th Cir. 2004).  "Under Rule 59(e), amending a judgment is appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact."  Demahy, 702 F.3d at 182.  Rule 59(e), however, is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before entry of judgment," Templet, 367 F.3d at 478, and it "should not be used to . . . re-urge matters that have already been advanced by a party."  Nationalist Movement v. Town of Jena, 321 F. App'x 359, 364 (5th Cir. 2009).  Reconsideration of a previous order is "an extraordinary remedy that should be used sparingly."  Id.

## ANALYSIS

Defendant moves the Court to reconsider its Order denying summary judgment on Plaintiff's retaliation claim for the two-day suspension on September 9, 2013.  (Dkt. # 46 at 1.)  Defendant argues that Plaintiff failed to identify sufficient evidence in the record to support a jury verdict in his favor that

he sustained a materially adverse employment action. (Id.) In response, Plaintiff contends that whether he suffered a materially adverse employment action is a fact issue that must be decided by a jury. (Dkt. # 49 at 12.)

   To state a claim for retaliation under Title VII, a plaintiff must show that (1) he engaged in conduct protected by Title VII, (2) he suffered a materially adverse action, and (3) a causal connection exists between the protected activity and the adverse action. Jenkins v. City of San Antonio Fire Dep't, 784 F.3d 263, 269 (5th Cir. 2015) (citing Aryain v. Wal-Mart Stores Tex. LP, 534 F.3d 473, 484 (5th Cir. 2008)). Once a plaintiff has made a prima facie case, the employer must provide some "legitimate nondiscriminatory reason" for the adverse action taken. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). If the employer provides a nondiscriminatory reason, the burden shifts back to the plaintiff to show a genuine issue of material fact that the employer's proffered nondiscriminatory reason is pretext for retaliation. See Alvarado v. Tex. Rangers, 492 F.3d 605, 611 (5th Cir. 2007).

   In its February 23, 2016 Order, the Court held that the evidence established that Plaintiff suffered an adverse employment action when he was 'placed in an off-duty status without any pay' on September 9, 2013. (Dkt. # 41 at 15.) In a footnote, the Court stated:

> Defendant argues Plaintiff's two-day suspension did not constitute an adverse employment action because Plaintiff was not harmed and he

>was ultimately reimbursed for the days he was suspended. (Dkt. # 27 at 10.) Defendant also contends that Plaintiff's schedule was not changed and he did not lose any benefits as a result of the suspension. (Id.) Nevertheless, because "[a] materially adverse action, in the retaliation context, is one which might dissuade[] a reasonable worker from making or supporting a charge of discrimination," then the Court finds that Plaintiff's placement in off-duty status, without pay and whether or not he was subsequently reimbursed, is a materially adverse action. Jenkins v. City of San Antonio Fire Dep't, 784 F.3d 263, 269 (5th Cir. 2015); see also Burlington N. & Santa Fe Ry. Co. v White, 548 U.S. 53, 72–73 (2006) ("A reasonable employee facing the choice between retaining her job (and paycheck) and filing a discrimination complaint might well choose the former. That is to say, an indefinite suspension without pay could well act as a deterrent, even if the suspended employee eventually received backpay.").

(Id. at 15 n.4.)

In her motion to reconsider, Defendant argues that (1) the Court's reliance on White was in error because White does not establish a per se rule that a suspension without pay of any length is materially adverse action, regardless of whether backpay is recouped; (2) the Court's assumption that Plaintiff's suspension caused him injury or harm was incorrect and the Court did not analyze Plaintiff's particular circumstances of his suspension and grievance history; and (3) the time and expense of a jury trial on the evidence presented by Plaintiff would be a manifest injustice. (Dkt. # 46 at 1–2.)

In White, the plaintiff received no pay for thirty-seven days during a work suspension pending an investigation. 548 U.S. at 58. Ultimately, the investigation showed that the plaintiff did not do anything wrong, and she was

awarded backpay for all thirty-seven days of her suspension.  Id.  The Supreme Court held that the factual determination of whether a thirty-seven day period without a paycheck was serious enough to be an adverse employment action was an issue for the jury to decide.  Id. at 72.  The Court's holding in that case, however, centered on the effects of the pay suspension—the physical and emotional hardships the plaintiff suffered due to uncertainty about losing her job, and the difficulty she had supporting her family because she was not paid during the suspension.  Id.  The Court also discussed the importance of the plaintiff's evidence and testimony that she had no income and no money and "[t]hat was the worst Christmas I had out of my life" and that she got "very depressed" and sought medical treatment for her distress.  Id. at 71–73.

Upon reconsideration, the Court finds the facts in this case materially distinguishable from those in White.  The plaintiff in White survived summary judgment because of the perceived severity of the paycheck issue.  Here, however, there is no evidence that Plaintiff did not timely receive a paycheck for his work when he was not suspended, even if he was not compensated for the two-day suspension until several weeks later.  Instead, the evidence of record in this case indicates that on September 9, 2013, he was placed on leave without pay for 7.83 hours, and on September 10, 2013, he was placed on leave without pay for 8 hours.  (Dkt. # 29-1 at 211.)  He was fully paid for the remaining hours in the pay period

and Plaintiff has produced no evidence that he did not timely receive a check for that time.  Plaintiff has failed to produce any evidence of an economic hardship.  Therefore, unlike the plaintiff in White, Plaintiff here was not without income for an extended period of time.

Additionally, while Plaintiff contends that he faced emotional and psychological harm, he has not produced sufficient evidence of the harm to overcome summary judgment.  In his response to the motion for reconsideration, Plaintiff again attempts to introduce the same evidence he previously used to support his hostile work environment claim, which was dismissed by the Court.  (Dkt. # 49 at 8–9.)  Plaintiff cites the evidence from his coworker that Postmaster Carr held a meeting on August 12, 2013, and stated that he would make Cabral's and other postal worker's lives miserable, and that Cabral would be removed from the Postal Service.  (Id.)  This alleged statement does not show that Plaintiff suffered any emotional or psychological harm from the two-day suspension.  The two-day suspension did not happen until several weeks after this comment, and, while Plaintiff argues that Postmaster Carr directed the suspension, Plaintiff has not produced any evidence to support this allegation.  Plaintiff also cannot rely on evidence of a hostile work environment to support any emotional or psychological harm as a result of his suspension, because the Court already determined that

13

Plaintiff failed to produce sufficient evidence of a hostile work environment. (See Dkt. # 41 at 30–36.)

Further, even if Plaintiff's allegation is true that Harpel, Pena, and Huron waited six months to charge and suspend Plaintiff for driving without a license, this is not dispositive on the issue of whether Plaintiff suffered a materially adverse employment action when he was suspended without pay for two days. As previously discussed, this is not evidence that he suffered any great financial hardship or emotional or psychological harm from the suspension similar to the plaintiff in White.

Plaintiff's response to Defendant's motion to reconsider further discusses the elements of retaliation, and he argues that he has produced sufficient evidence to meet the remaining elements of his prima facie case. (Dkt. # 49 at 10–11.) Nevertheless, upon reconsideration, the Court concludes Plaintiff has failed to meet his burden of producing sufficient evidence to overcome summary judgment that he suffered a materially adverse employment action when he was suspended without pay for two days on September 9, 2013. Plaintiff has not demonstrated that his suspension was objectively material. Because he cannot make out a prima facie case of retaliation, summary judgment is granted in favor of Defendant on Plaintiff's only remaining claim. See White, 548 U.S. at 68.

CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's Motion for Reconsideration of Order Denying Summary Judgment in Part and **DISMISSES WITH PREJUDICE** Plaintiff's remaining claim in this case for retaliation based on his placement in off-duty status without pay on September 9, 2013.

**IT IS SO ORDERED.**

**DATED**: San Antonio, Texas, May 11, 2016.

_____
David Alan Ezra
Senior United States Distict Judge